JEREMIAH WARREN *versus* THE INHABITANTS OF ISLESBOROUGH.

No person can maintain an action against a town for supplies furnished to a pauper, but the one who gave the notice to the overseers.

If a notice has been given by one furnishing relief to a pauper, and supplies have been furnished by the overseers, believed by them to be sufficient, a new notice is essential to a recovery of the town for supplies furnished afterwards.

There seems to be no limitation to the claim of an individual against a town for the support of a pauper, but that of the general statute, although there is a special one to an action by one town against another.

EXCEPTIONS from the Eastern District Court, CHANDLER J. presiding.

Assumpsit for supplies furnished by the plaintiff (an inhabitant of Islesborough,) to one Rebecca Thomas, residing in that town, and having her legal settlement therein.

On the trial in the District Court, much testimony was introduced on each side. Thereupon the defendants contended that 'no notice was ever given by the plaintiff to them, that the pauper was in need of support, and that when notice was given by another person, the overseers made suitable provision ; and requested the Judge to instruct the jury, that no person could maintain an action against a town for supplies furnished a pauper, excepting the person who gave the notice to the overseers ; and also, that if the overseers on receiving notice made provision for the pauper, which they in good faith believed, and had reason to believe, would be sufficient to relieve her necessities, that a new notice was necessary to charge the town for subsequent supplies, although the provision made by the overseers in fact proved to be insufficient.

The Judge declined to give such instructions, and did instruct the jury, that after notice a sort of general credit was given to the pauper at the expense of the town, and that any inhabitant of the town might recover for supplies furnished, which were suitable to the condition of the pauper ; and also, that upon receiving notice, it was the duty of the overseers to see that all supplies were furnished which the pauper's necessities might require ; and though they made provisions which in good faith they believed to be sufficient, if they proved to be insufficient in point of fact, any inhabitant of the town might supply the pauper without any new notice, and the town would be liable to pay the amount thus furnished ; but if the overseers had relieved her necessities, and she again became necessitous and fell into distress, a new notice must be given to the overseers, and they must neglect to furnish her, before any one furnishing could recover for it of the town. Verdict for the plaintiff. The defendants excepted.

*W. Kelley,* for the defendants, contended that no one, but the person calling upon the town and notifying the overseers of the poor, can maintain an action against the town for sup-

porting one of their paupers, without an express contract. The person thus seeking to recover of the town must also himself be an inhabitant thereof at the time.

When complaint was made, and the overseers had furnished relief in such manner as they esteemed sufficient, the individual, who had complained, must give a new notice to the overseers before he could recover of the town, if the provision made proved insufficient. And there is still greater reason why notice should be given by another person, who had never supported the pauper.

The instruction was wrong in both respects. *Mitchell* v. *Cornville,* 12 Mass. R. 333 ; *Watson* v. *Cambridge,* 15 Mass. R. 286 ; *New Salem* v. *Wendell,* 2 Pick. 341 ; *Worden* v. *Leyden,* 10 Pick. 24.

*W. G. Crosby,* for the plaintiff, argued, that the St. 1821, c. 122, § 18, is very general, that "every town shall be holden to pay any expense which shall necessarily be incurred for the relief of any pauper, by any inhabitant, not liable for his support, after notice;" that it is wholly immaterial how, or by whom, the prerequisite notice to the overseers should be given ; and that it is of no importance to the town who furnishes the supplies, if their officers neglect it, for the town will be holden to pay only what is necessarily furnished, and that they are bound to do themselves. The instruction in this respect was correct.

By the statute, towns are made liable to pay any expense necessarily incurred by an inhabitant in the support of a pauper after notice and request, until provision shall be made by the selectmen. Whether this was necessarily incurred is a question of fact to be settled by the jury; and it would not have been incurred necessarily, if provision had been made by the town. The intention of the overseers to do a thing is of no avail, if it be not done The jury must be understood to have found, that the pauper was not relieved. As soon as notice is given to the overseers, that a pauper is in want, the town becomes chargeable, and that charge continues so long as the want continues.

The opinion of the Court was by

EMERY J. — How often, and from whom, must the overseers of the poor receive notice of the distress and need of immediate relief of a pauper, to authorize any inhabitant of a town, upon the neglect of the overseers, to make supplies, and by that means render the town chargeable for the expenses of the relief furnished by the individual? It certainly is an interesting question.

By St. 1821, c. 122, § 3, every town in the State is holden to relieve and support *all poor and indigent persons lawfully settled therein,* whenever they shall stand in need thereof. By the 11th section, it is the duty of the overseers of the poor, in their respective towns, to provide for the immediate comfort and relief of *all persons residing or found therein, not belonging thereto,* but having lawful settlements in other towns, *when they fall into distress,* and stand in need of immediate relief, and until they shall be removed to the places of their lawful settlements. By the 18th section, it is made the duty of said overseers to relieve and support, and in case of their decease, decently bury all poor persons residing or found in their towns, having no lawful settlement within the State, when they shall stand in need, to be paid out of the respective town treasuries, if not recovered of relations. And every town shall be holden to pay any expense which shall be *necessarily incurred* for the relief of any pauper, by *any inhabitant,* not liable by law for his or her support, *after notice and request made to the overseers of the said town,* and until provision shall be made by them.

The case cited, *Worden* v. *Leyden,* 10 Pick. 24, decides that the promise of one overseer of the poor, to one furnishing relief to paupers whom he knew were placed by the overseers under contract with another person to be supported, "was not sufficient evidence of a contract express or implied to go to the jury, and that if there was any inhumanity on the part of the third person so employed to keep the paupers, notice should have been given to the overseers, and if they had neglected to correct the misconduct complained of, or to provide other suit-

able support for the paupers, an individual might be warranted in providing for their relief at the expense of the town, in the same manner as if no provision had been made for them, after due notice to the overseers. St. 1793, c. 59, § 13." Of this portion of that section, our provision in the 18th section of our own statute, is an exact transcript, leaving out the word, district.

In *Lee* v. *Deerfield*, 3 N. H. R. 290, where, by their statute of Feb. 8, 1791, selectmen are made overseers of the poor, it was held, that "when one of the selectmen of a town orders supplies to be furnished to a person entitled to relief, the assent of the other selectmen is to be presumed, because it is their duty to assent. It would be extremely inconvenient, if no supplies could be furnished to paupers, without the express consent of a majority of the selectmen, while no inconvenience can result from holding, that proper supplies, furnished on proper occasions, by order of one of the selectmen, shall bind the town in the same manner as if furnished by the express order of all the selectmen."

In the action, *New Salem* v. *Wendell*, 2 Pick. 341, it was held to constitute a good defence to the action, that at the time when the expense was incurred, there was a place provided for the pauper's support in Wendell, where her settlement was, that the place was so near that she might walk to it without difficulty, and that all this was known to the plaintiffs, to the person who supplied the pauper in Salem, and to the pauper herself.

In the case, *Watson* v. *Cambridge*, 15 Mass. R. 286, it was held, that notice to the overseers of the poor need not be in writing. On general notice, the overseers may satisfy themselves on the points for them to know. And it is no objection to the action, that more than two years elapsed after the notice was given, before the action was brought, and that a bond given for the support of the pauper to the administrator of the estate of her former master, she having been his slave, did not prevent her being regarded as a pauper. There seems to be no limitation but that of the general statute, to the individ-

Warren v. Islesborough.

ual's claim, though there would be to an action by the town. *Inhab. of Readfield* v. *Inhab. of Dresden*, 12 Mass. R. 317.

The case, *Mitchell* v. *Inhab. of Cornville*, 12 Mass. R. 333, confines the action to an inhabitant against the town in which the pauper supplied may be resident, and does not authorize the persons supplying to sustain an action against the town where the pauper may be lawfully settled, and out of which the supplies were made.

It has been held, that when due notice has been given to a town that a pauper has become chargeable, and the town notified has made due provision for the pauper, and he again needs assistance, new notice must be given of the fact. 12 Mass. R. 316; 14 Mass. R. 186. And in this Court, in *Green* v. *Taunton*, 1 Greenl. 228, it was decided that new notice is necessary so that the town may elect whether they will support the pauper in another town, or remove him to their own.

We have thus in review all the cases which were cited on the argument, together with some others. And it is insisted by the plaintiff, that the construction ought to be liberal, so that if the town officers neglect their duty, it is no matter who gives the notice, any inhabitant affording relief should maintain his suit for remuneration.

The defendants are unprepared to yield to such a latitudinarian construction, and urge that none but the notifying individual can sue. They profess to be dissatisfied also with the instructions of the Judge in the District Court, that though the overseers made provisions which in good faith they believed to be sufficient, if they proved to be insufficient in point of fact, any inhabitant of the town might supply the pauper without any new notice, and the town would be liable to pay the amount thus furnished. The Judge had before directed the jury that after notice, "a sort of general credit was given to the pauper at the expense of the town, and any inhabitant of the town might recover for supplies furnished *which were suitable to the condition* of the pauper."

We find it most evidently the design of the Legislature to provide an efficient organization of a body of men under oath

to perform the office of relieving the distressed and such as stand in need of immediate relief. We must presume that they are selected in each town with regard to the kindness of their hearts, their active benevolence and their prudent attention to the best method of mitigating the ills of poverty, and with the high responsibility under which they act, that they execute their office with integrity. It is the duty of courts therefore to expect decisive proof of a breach of this trust. Much must be left to the presumed just judgment of the overseers, as to the extent of the supplies to be furnished, on the one hand to guard against encouragement of idleness and waste, and on the other hand to secure relief to suffering humanity. The courts too have deemed it essential that regular notice should be given to the overseers of any new cause for their interference, and that the claim for indemnity should come from the person entitled to prosecute for it. And we think it fairly deducible *that the person,* who makes a supply, *with a view to remuneration from the town,* should first give notice to the overseers, and that such person only shall sustain an action against the town. We are not prepared to adopt the direction of the Judge that " after notice a sort of general credit was given to the pauper at the expense of the town." We believe that a doctrine like this would be of mischievous tendency, and open the door to speculation on supposed omissions of overseers, which would be at once corrected *upon direct notice* of an unexpected demand for extended supply, *given by a person ready* to make it, on subsequent neglect of the overseers. The tendency too would be to involve the towns in expensive law suits, with no necessary call for them.

It may be questionable whether " supplies furnished which were *suitable* to the condition of the pauper" be or be not precisely those contemplated by the statute, when it says, " every town shall be holden to pay any expense which shall be *necessarily incurred for the relief* of any pauper." We are not disposed to make a narrow construction however, when the proper call exists for relief, after direct notice of necessary

aid required, has been given to the overseers, and they have neglected their duty. But upon what is now before us, we are satisfied that the exceptions must be sustained.

*Verdict set aside and a new trial granted.*